**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| **ARSENE KOUMBA,** | § | |
| | § | |
| ***Plaintiff*,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:26-cv-00126** |
| | § | |
| **PETROSMITH COATING GP LLC** | § | |
| and **PETROSMITH COATING, LP,** | § | |
| | § | |
| ***Defendants*.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff ARSENE KOUMBA ("Plaintiff" or "Koumba"), by and through undersigned counsel, files this Original Complaint against Defendants PETROSMITH COATING GP LLC and PETROSMITH COATING, LP ("Defendants" or "Petrosmith").

## I. PARTIES

1. Plaintiff Arsene Koumba is an individual residing in Taylor County, Texas and at all relevant times was employed by Defendants in Taylor County, Texas.

2. Defendant Petrosmith Coating GP LLC is a domestic limited liability company conducting business in the State of Texas at 7435 US-277 N, Abilene, TX 79606, and may be served with process by serving its registered agent C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

3. Defendant Petrosmith Coating, LP is a domestic limited liability company conducting business in the State of Texas at 7435 US-277 N, Abilene, TX 79606, and may be served with process by serving its registered agent C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises under federal law, including (1) the Civil Rights Act of 1871, 42 U.S. Code § 1981 *et seq.* and (2) Title VII, 42 U.S.C. § 2000e *et seq.*

5. Venue properly lies in this Court under 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to these claims occurred in Taylor County, which is in the District and Division in which this suit has been filed.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff timely filed a Charge of Discrimination (EEOC Charge No. 31C-2025-00776) with the Equal Employment Opportunity Commission and received a Notice of Right to Sue dated February 3, 2026, filing this complaint within ninety (90) days.

7. Plaintiff timely filed a Charge of Discrimination (TWCCRD Charge No. 1A25802) with the Texas Workforce Commission Civil Rights Division and received a Notice of Right to File Civil Action dated January 30, 2026, filing this complaint within sixty (60) days.

## IV. FACTUAL BACKGROUND

8. Koumba is an African American male who worked for Defendants beginning in November 2022 as an operator and maintenance employee.

9. Koumba was the only Black person in his shop for years.

10. Shortly after he was hired, Koumba became the target of persistent racial harassment and discriminatory treatment by his supervisors, Scott Clifford (Shop Supervisor) and Keith Ward (Plant Supervisor).

11. Both of Koumba's supervisors—and his primary harassers—were white men.

12. Scott and Ward subjected Koumba to appalling racial epithets, calling him a "black

a** monkey" and an "African piece of s**t," telling him "Africans are dirty," and making repeated derogatory references to "[Koumba's] kind".

13. The situation escalated when Koumba interrupted a conversation Scott Clifford was having to report that a machine was down and that he needed supplies to fix it.

14. In an apparent rage after this perceived insubordination from an African American colleague, Scott Clifford retrieved a firearm from his truck, pointed it at Koumba, and threatened: "Next time you interrupt me, this is what will happen to you."

15. Koumba immediately reported the assault to Plant Supervisor Keith Ward. Ward stated he would talk to Scott and then go to HR.

16. Even though multiple co-workers had either witnessed the assault or listened in on Koumba's report of the assault, no meaningful action was taken following Koumba's report to Ward.

17. Koumba then reported the assault directly to Beth Seals, Petrosmith's Head of Human Resources ("HR"), requesting to be moved from the shop.

18. Seals assured Koumba Petrosmith would investigate his concerns. Six months passed with no change: the same type of discriminatory comments were still made and Scott Clifford still supervised Koumba.

19. For example, after Koumba reported the assault to Petrosmith's HR, Scott Clifford told Koumba that if he did not do his job "correctly," he would be sent to "the plantation." Multiple co-workers overheard Scott Clifford make this comment.

20. Koumba spoke with another person in HR about the ongoing harassment: Chris. Chris got back to Koumba a week later and stated Keith Ward told them not to move Plaintiff.

21. The unrelenting hostile work environment and Petrosmith's refusal to take any action to Protect Koumba caused him significant mental distress, including anxiety and post-traumatic stress disorder ("PTSD"), resulting in his first constructive discharge around June 2024.

22. Approximately four months after resigning, Koumba learned from a co-worker that Scott Clifford had been terminated.

23. Plaintiff was rehired on October 19, 2024.

24. But, upon his return, Koumba faced renewed harassment under Luis Maravilla ("Maravilla"), who had replaced Scott Clifford.

23. Maravilla showed Plaintiff's clothing line logo to shop workers and encouraged others to mock it, including laughing and condoning comments from others that the logo "looks like a monkey."

24. Coworkers also made references to "taking [him] back to the train station" in a disturbing allusion to slave transportation.

25. The renewed harassment caused Plaintiff's anxiety to escalate.

26. On April 7, 2025, Plaintiff sought medical care for debilitating anxiety and was prescribed medication. He did not return to work after this appointment.

27. On April 15, 2025, Plaintiff went to HR and informed them he was resigning, citing the ongoing hostile work environment and the company's continued failure to address his repeated complaints.

28. Plaintiff spoke with multiple people in Petrosmith's HR department, including Chris and Beth Seals, about his ongoing issues with the shop.

29. No one Koumba spoke to asked how to make the situation better, offered any accommodation, or took any action to resolve Plaintiff's concerns or prevent the recurrence of

discriminatory treatment.

30. Plaintiff turned in his uniform the following day.

31. Throughout his employment and both periods of constructive discharge, Petrosmith maintained a pattern of failure to investigate, remedy, or prevent the racially hostile work environment despite Plaintiff's repeated complaints.

## V. CAUSES OF ACTION

32. Koumba incorporates the above paragraphs as if fully set forth herein and in support of each of the causes of action listed below.

### COUNT ONE: HOSTILE WORK ENVIRONMENT AND HARASSMENT
### (Violation of 42 U.S.C. § 1981 *et seq.*)

33. 42 U.S.C. § 1981 prohibits harassment by employers and supervisors where such harassment was motivated by race.

34. Koumba was subjected to harassment by multiple supervisors, including Keith Ward, Luis Maravilla, and Scott Clifford collectively (the "Supervisors") based on Koumba's race.

35. In addition to the Supervisors' direct harassment, Koumba was also subjected to racist comments and race-based harassment from his co-workers. The Supervisors encouraged and participated in the jokes and harassment from Koumba's co-workers.

36. Koumba neither welcomed nor invited the Supervisors' conduct. Nor did Koumba welcome or invite the comments.

37. This conduct was so severe that a reasonable person in Koumba's position would find his work environment hostile or offensive.

38. Koumba did find this work environment hostile and abusive, to the point that it caused him serious anxiety and PTSD.

39. Despite Petrosmith's knowledge of the Supervisors' pervasive harassment, Scott [Last Name]'s assault on Koumba, and the insults from Koumba's co-workers, Petrosmith took no steps to prevent or correct this behavior. Petrosmith's failure to do so directly contributed to Koumba's harm, as the lack of consequences further emboldened Kouba's harassers.

40. As a result of Petrosmith's actions, Koumba suffered from and continues to suffer from substantial damages, including lost wages, lost employment benefits, emotional distress, mental anguish, humiliation, and other compensable harm.

**COUNT TWO: RETALIATION**
**(Violation of 42 U.S.C. § 1981 *et seq.*)**

41. 42 U.S.C. § 1981 prohibits retaliation for engaging in protected activity.

42. Petrosmith retaliated against Koumba for complaining to HR about the Scott [Last Name]'s racially motivated assault and the Supervisors' pervasive harassment.

43. After Koumba complained to HR, no action was taken and Scott Clifford retaliated against Koumba. Specifically, the harassment intensified in frequency and Scott Clifford forced Koumba to pick up trash outside for hours, despite that not being a part of Koumba's job, and Koumba was denied the opportunity to transfer to another division where he would have been protected from the harassment he was experiencing. Eventually, the harassment became so pervasive that Koumba was constructively terminated.

44. Koumba's complaint to Petrosmith's HR was the cause of Petrosmith's adverse employment actions and such actions were taken with the intent and effect of punishing Koumba and deterring others from opposing the Supervisors' racially-offensive conduct.

45. As a result of Petrosmith's actions, Koumba suffered from and continues to suffer from substantial damages, including lost wages, lost employment benefits, emotional distress, mental anguish, humiliation, and other compensable harm.

## COUNT THREE: RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT (Title VII, 42 U.S.C. § 2000e et seq. and Texas Labor Code § 21.051)

46. Koumba is Black and a member of a protected class under Title VII of the Civil Rights Act of 1964 and Texas Labor Code Chapter 21.

47. Throughout his employment with Petrosmith, Koumba was subjected to severe and pervasive racial harassment including racial insults, name calling, and repeated references to slavery.

48. The harassment was unwelcome and included a supervisor retrieving a firearm, pointing it at Koumba, and threatening him with violence.

49. Koumba repeatedly complained about the racial harassment to his supervisor, Keith Ward, and multiple members of Petrosmith's HR department.

50. Despite Koumba's complaints, Petrosmith failed to take prompt and adequate remedial action. Petrosmith ignored Koumba's reports, refused his request for reassignment, and allowed the harassment to continue under multiple supervisors.

51. The racially hostile work environment was sufficiently severe and pervasive to alter the terms and conditions of Koumba's employment and create an abusive working environment.

52. As a direct and proximate result of Petrosmith's unlawful discrimination, Koumba suffered damages including lost wages, lost employment benefits, emotional distress, mental anguish, humiliation, and other compensable harm.

## COUNT FOUR: CONSTRUCTIVE DISCHARGE (Title VII, 42 U.S.C. § 2000e *et seq.*; Texas Labor Code §§ 21.001 *et seq.*)

53. Koumba incorporates by reference all preceding paragraphs as though fully set forth herein.

54. Koumba's failure to address the racially hostile work environment created working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

55. In or around June 2024, after enduring months of racial harassment, firearm threats, and Petrosmith's refusal to investigate or remedy the hostile environment despite Koumba's complaints, Koumba was constructively discharged and forced to resign to protect his mental health.

56. Koumba was rehired on October 19, 2024 after learning that one of his primary harassers had been terminated. However, the hostile work environment resumed immediately under new supervisor, who mocked Plaintiff and condoned racially offensive comments comparing Plaintiff to a monkey and referencing slave transportation.

57. On April 7, 2025, Koumba sought medical treatment for debilitating anxiety caused by the ongoing harassment and was prescribed medication. On April 15, 2025, Koumba again informed HR of his resignation, citing the continued hostile work environment and Petrosmith's failure to address his repeated complaints.

58. HR made no inquiry or effort to resolve Koumba's concerns or prevent the recurrence of the discriminatory treatment that directly caused both resignations.

59. Koumba's resignation was the foreseeable consequence of Petrosmith's unlawful conduct and failure to remedy the racially hostile work environment.

60. Petrosmith's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Texas Labor Code, §§ 21.001 *et seq.*

61. As a direct and proximate result of Petrosmith's unlawful constructive discharge, Koumba suffered damages including lost wages, lost employment benefits, emotional distress, mental anguish, humiliation, and other compensable harm.

**COUNT FIVE: RETALIATION**
**(Title VII, 42 U.S.C. § 2000e *et seq.*; Texas Labor Code §§ 21.001 *et seq.*)**

62. Koumba engaged in protected activity under Title VII and the Texas Labor Code when he:

a) Complained to supervisor Keith Ward about the firearm threat and racial harassment;

b) Complained multiple times to Petrosmith's HR about racial harassment and requested to be moved from the shop; and

c) Objected to discriminatory treatment based on race and disability throughout his employment.

63. Petrosmith was aware of Koumba's protected activity.

64. Following Koumba's protected activity, Petrosmith took adverse employment actions against Plaintiff, including:

a) Forcing Koumba to perform menial labor, like picking up trash for hours, despite that task being outside of his job description;

b) Refusing to transfer Koumba from the shop despite his request for reassignment;

c) Failing to investigate or take any corrective action despite Koumba's repeated complaints; and

d) Constructive discharge in June 2024 and April 2025.

65. A causal connection exists between Koumba's protected activity and the adverse employment actions. Koumba's resignation followed repeated unanswered complaints. The temporal proximity between Koumba's complaints and Petrosmith's pattern of inaction, combined

with Petrosmith's explicit refusal to transfer Koumba after his complaints, supports an inference of retaliation.

66. Petrosmith’s failure to address Koumba’s complaints, combined with allowing continued harassment, demonstrates retaliatory animus and deliberate indifference to Plaintiff's protected activities. Petrosmith’s conduct was willful, intentional, and done with reckless disregard for Plaintiff's federally protected rights.

67. As a direct and proximate result of Petrosmith’s retaliation, Koumba suffered damages including lost wages, lost employment benefits, emotional distress, mental anguish, humiliation, and other compensable harm.

## VI. ALTER EGO AND EMPLOYER LIABILITY

68. At all relevant times, Defendants operated as a single, integrated enterprise with respect to Plaintiff’s employment. Petrosmith Coating GP, LLC, as the general partner, exercised control over the day-to-day management and operations of its subsidiaries, including decisions relating to hiring, firing, disciplining, and managing Plaintiff.

69. In the alternative, Defendants were joint employers of Plaintiff, as each exercised sufficient control over the terms and conditions of Plaintiff’s employment, including but not limited to: the right to control when, where, and how Plaintiff performed her job; furnishing Plaintiff with tools, materials, and equipment; setting Plaintiff’s hours of work; paying Plaintiff wages; providing benefits including insurance and leave; and exercising the right to discharge Plaintiff.

70. By virtue of the integrated-enterprise and/or joint-employer relationship, each Defendant is jointly and severally liable for the unlawful employment practices described herein.

## VII. REMEDIES

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and grant relief as follows:

a. Back Pay, Front Pay, and Benefits: An award for the wages, employment benefits, and other compensation Plaintiff would have received but for Defendants' unlawful conduct, plus interest;

b. Compensatory Damages: For emotional distress, suffering, mental anguish, anxiety, PTSD, and other non-pecuniary losses, in an amount to be determined by the jury;

c. Punitive Damages: As authorized by law for willful, malicious, or reckless conduct, in an amount to be determined by the jury;

d. Attorneys' Fees and Costs: Reasonable attorneys' fees, expenses, and costs, as provided by Title VII § 706(k) and Texas Labor Code § 21.259;

e. Pre-Judgment and Post-Judgment Interest; and

f. Any other and further relief the Court deems just and proper.

## VIII. JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues of facts and damages raised in this case.

Respectfully Submitted,

**CARTER LAW GROUP, PC**

/s/ *Kathryn "Kassi" Yukevich*
Kathryn "Kassi" Yukevich
Texas Bar No. 24133390
kyukevich@clgtrial.com
351 W. Jefferson Blvd.
Suite 503
Dallas, TX 75208
Tel. 214.390.4173

**ATTORNEY FOR PLAINTIFF**